<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————————— :
                                       :
MICHAEL GARRETT,                       :
                                       :        Civil No. 05-2653 (JBS)
              Petitioner,              :
                                       :
         v.                            :
                                       :        **MEMORANDUM OPINION**
JOSEPH V. SMITH,                       :
                                       :
              Respondent.              :
———————————————————— :

**APPEARANCES:**

        MICHAEL GARRETT, Petitioner <u>pro</u> <u>se</u>
        #58716-053
        U.S.P. Lewisburg
        P.O. Box 1000
        Lewisburg, Pennsylvania 17837

        JOHN ANDREW RUYMANN, ESQ.
        United States Attorney's Office
        402 East State Street, Suite 430
        Trenton, New Jersey 08608
        Counsel for Respondent

**SIMANDLE, District Judge**

        This matter is before the Court on petitioner Michael

Garrett's ("Garrett") application for habeas corpus relief under

28 U.S.C. § 2241,[1] challenging a disciplinary proceeding for

_____

        [1]  This action was initially filed by petitioner in the
Middle District of Pennsylvania because petitioner is confined at
U.S.P. Lewisburg.  The Middle District of Pennsylvania
transferred the matter to this district, on or about May 20,
2005, pursuant to 28 U.S.C. § 1404(a), because the subject prison
disciplinary proceeding occurred at FCI Fort Dix in New Jersey.

rioting that occurred at FCI Fort Dix in which sanctions were imposed resulting in, among other things, the loss of 40 days good conduct time, and a recommendation for a disciplinary transfer.  Garrett asserts that he was denied due process and seeks restoration of his good conduct time, expungement of the incident report, and injunctive relief directing his return to FCI Fort Dix

The Government filed an answer to the petition on or about July 28, 2005, with a copy of the relevant record for review. The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit.

<u>BACKGROUND</u>

At the time the alleged disciplinary infraction occurred, Garrett was confined at FCI Fort Dix in Fort Dix, New Jersey, serving an 87 month prison term as imposed by the United States District Court for the Eastern District of New York, on April 6, 2001, for his federal convictions for intent to distribute cocaine and use of a firearm during a narcotics crime.  Garrett's projected release date is February 22, 2007. (Declaration of Roberta M. Truman, Assistant Regional Counsel, Northeast Regional Office, Federal Bureau of Prisons ("BOP"), dated July 25, 2005, (hereinafter "Truman Decl."), at ¶ 3 and Exhibit 1).

On October 21, 2003, Garrett received an incident report charging him with the prohibited conduct of rioting in violation of Code 201.  The incident report describes the event as follows:

> Based on information received on October 20, 2003, an investigation concluded on your involvement in the institution disturbance on August 17, 2003.  It was determined that on August 17, 2003, at approximately 10:00 p.m., you were shouting obscenities at staff out the window of unit 5802.  This conclusion is based on the comments of Officers Thompson, Schwinge, Rempo and CI #0301157. Officers Thompson and Schwinge stated that they heard you shout "Thompson why don't you come up here and bring that bald headed bitch with you."  Officer Rempo identified you as one of the inmates yelling at staff from 5802, saying "were [sic] going to kill you, fuck you C.O., come on up." CI #0301157, stated he saw you, along with several other inmates yelling at staff from the window unit 5802.  Your actions during this incident greatly effected the safety and well being of all inmates and staff inside the institution. By yelling obscenities at staff from the housing unit windows you disturbed the secure and orderly running of the institution.

(Truman Decl., Ex. 2, § 11).

On October 21, 2003, Lt. Thomas Marts advised Garrett of his rights and gave him a copy of the incident report.  Lt. Marts asked Garrett if the incident was true, to which Garrett responded that he was being set up.  (Truman Decl., Ex. 2, § 24). Garrett declined to name any witnesses and provided no alibis for the incident.  (Id. at § 25).  Lt. Marts reviewed memoranda from staff present at the scene of the incident and concluded that the incident report was true as written.

The report was then forwarded to the Unit Disciplinary Committee ("UDC"), and petitioner again denied his guilt in the

charged disciplinary offense.  (Id. at § 17).  Given the seriousness of the offense and Garrett's repetitive behavior, the UDC referred the incident report to the Disciplinary Hearing Officer ("DHO") on October 23, 2003.  (Id. at §§ 18-21).

The DHO initiated a hearing at FCI Fort Dix on November 6, 2003, but adjourned the matter because Garrett requested a different staff representative.  The hearing re-convened on November 14, 2003, but was again postponed when Garrett informed the DHO that his staff representative had not interviewed the persons identified by petitioner as potential witnesses. Finally, the hearing re-convened on November 24, 2003.  Garrett's staff representative informed the DHO that none of the statements he took from the potential witnesses would aid petitioner.  At the hearing, Garrett affirmed that he was satisfied with the representation he received.  (Truman Decl., Ex. 5, Parts II and III).

Garrett also spoke at the hearing on November 24, 2003.  He stated that he was not guilty of the charge and generally alleged that there was a conspiracy against him.  Garrett also questioned the timing of the report and asked that the incident report be dismissed because it was not issued timely.  Garrett conceded that the time delay between the incident and his receipt of the incident report did not hinder his preparation of a defense to the disciplinary charge.  (Id. at Part III).  He also submitted a

written statement which affirmed that Garrett was not involved in the August 17, 2003 disturbance at FCI Fort Dix, that the incident report was written by Lt. Marts in retaliation for a memo that Garrett wrote in which he accused Lt. Marts of trying to coerce Garrett into making false statements about other inmates (see Petition at Ex. C), and that the other memos written by BOP staff regarding the August 17, 2003 incident were back-dated and false.  (Petition at Ex. I).

    The DHO considered the following information in reaching its decision: (1) Garrett's statement; (2) the Incident Report and Investigation; (3) memoranda by Lt. Marts; (4) the memorandum by R. Odell; (5) the memorandum by Officer Schwinge; (6) the memorandum by R. Rempo; (7) the memorandum by R. Thompson; (8) the memorandum by T. Baker; and (9) confidential information provided by informants, not revealed to Garrett but deemed reliable because the information was corroborated by documentation submitted by staff.[2]  (Truman Decl., Ex. 2, part III).

    The DHO issued a report and decision, which was delivered to petitioner on or about December 3, 2003.  The DHO determined that

_____

    [2]  The informants' statements were not provided with the record because of the confidential and sensitive nature of the information that could potentially disrupt the security of the institution if disclosed to petitioner.  However, the respondents offered to provide the confidential information to the Court under seal should the Court deem its review necessary in rendering a decision in this matter.

the act of rioting was committed as charged based on the greater weight of evidence provided at the hearing, in particular, the memoranda submitted by staff and other confidential information. Further, the DHO found that petitioner was not credible, and offered nothing that supported his denial of involvement in the August 17, 2003 incident.  Consequently, the DHO imposed the following sanctions: 60 days disciplinary segregation, 40 days reduction of good conduct time, and a recommendation for a disciplinary transfer.  Garrett was informed of his right to appeal the action administratively within 20 days of receipt of the decision on December 3, 2003.  (Truman Decl., Ex. 5, Parts V, VI, and VII).

There is no dispute that Garrett exhausted his administrative remedies before bringing this § 2241 habeas petition.

## II.  CLAIMS PRESENTED

Garrett raises the following claims in his petition:

Ground One:  Petitioner's First Amendment rights to free speech were violated by issuance of a false disciplinary report.

Ground Two:  Petitioner was subjected to a retaliatory transfer in violation of the First Amendment and his Fifth Amendment right to due process.

Ground Three:  Petitioner was coerced into filing false reports against other inmates, which he refused to do.

Ground Four:  The BOP staff conspired to bring false charges against him because petitioner refused to make false statements against other inmates.

The Court construes these claims as essentially alleging that false disciplinary charges and sanctions were imposed in violation of his right to due process under the Fifth Amendment, and that the disciplinary report and transfer violated the First Amendment.

III.  <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

Garrett seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

B.  <u>Applicable Regulations</u>

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 <u>et seq</u>.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a Code Level 200 category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

D.  Merits of Petitioner's Claims

1.  *Procedural Due Process Claims*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S.

CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme
Court set forth the requirements of due process in prison
disciplinary hearings.  An inmate is entitled to (1) written
notice of the charges and no less than 24 hours to marshal the
facts and prepare a defense for an appearance at the disciplinary
hearing; (2) a written statement by the fact finder as to the
evidence relied on and the reasons for the disciplinary action;
and (3) an opportunity "to call witnesses and present documentary
evidence in his defense when to do so will not be unduly
hazardous to institutional safety or correctional goals."  Wolff,
418 U.S. at 563-71.  An inmate is also entitled to an inmate
representative in some cases, and a written decision by the
factfinder as to evidence relied upon and findings.  See Von
Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).

     In this case, there are no assertions that any of these
procedural due process requirements were not met.  Rather,
Garrett disputes the validity of the disciplinary charge,
asserting that the charge was retaliatory and false in violation
of his First and Fifth Amendment rights.

     1.  *There Was Sufficient Evidence to Support the Charge*

     The Supreme Court has held that procedural due process is
not satisfied "unless the findings of the prison disciplinary
board are supported by some evidence in the record."
Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.

10

<u>Kann</u>, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court

has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

<u>Hill</u>, 472 U.S. at 456 (internal citations omitted).  Moreover,

the Court stated:  "The Federal Constitution does not require

evidence that logically precludes any conclusion but the one

reached by the disciplinary board.  Instead, due process in this

context requires only that there be some evidence to support the

findings made in the disciplinary hearing."  <u>Id.</u> at 457.

Here, there is sufficient evidence noted by the DHO in

reaching his determination.  The DHO's Report demonstrates that,

after an investigation and the DHO's consideration of all the

relevant evidence, the DHO found that the greater weight of

evidence supported a finding that Garrett did commit the

prohibited act in violation of Code 201.  This evidence included

several memoranda by staff and confidential information stating

that Garrett was involved in the August 17, 2003 disturbance at

FCI Fort Dix.  Further, the DHO found that Garrett's statement

was not credible and that there was no evidence offered that

supported his denial of the rioting charge.  The DHO found no basis for the claim that BOP staff attempted to coerce Garrett into giving false reports on other inmates, and that Garrett's refusal to do so prompted a retaliatory response to file a false charge against him.

Therefore, based upon this evidence as relied upon by the DHO, the Court finds that Garrett's right to due process was not violated by the determination of the DHO.  The procedures enunciated in <u>Wolff</u>, supra, were complied with, and there was more than "some evidence", in accordance with <u>Hill</u>, <u>supra</u>, to support the DHO's finding of guilt.

2.  *First Amendment Was Not Violated.*

Garrett also claims that his First Amendment rights of free speech and association were violated when prison officials filed a "false" disciplinary report, attempted to coerce him into "snitching" on other inmates, labeled Garrett as a "snitch", and placed him in a segregated unit after petitioner obtained affidavits supporting his "innocence" of the disciplinary charge. (Petition, Ground One).

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech, ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

12

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court reiterated that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system."  515 U.S. at 485 (citing Jones v. North Carolina Prisoners' Labor Unio, Inc., 433 U.S. 119, 125 (1977)).  Thus, an inmate's limited First Amendment rights do not include any purported right to disobey prison rules or incite a disturbance.  An inmate's speech and association rights are necessarily subject to major legitimate restrictions in order to accommodate the security and operational needs and objectives of prisons.  Id.  "Such considerations are peculiarly within the province and professional expertise of correctional officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  Jones, 433 U.S. at

13

128.  See also Whitley v. Albers, 475 U.S. 312, 321-22
(1986)(prison officials should be accorded wide discretion to
make and enforce rules that are necessary to preserve order,
discipline and security).

     Here, there was evidence to show that Garrett had
participated in the August 17, 2003 disturbance, and the DHO
found no credible evidence submitted by petitioner to prove that
the disciplinary report and resulting sanctions were an
exaggerated response to Garrett's disciplinary infraction of Code
201.  Nor does Garrett show that his disciplinary transfer was
retaliatory in violation of the First Amendment.
In this regard, Garrett must be able to demonstrate that the
BOP's action in transferring him to another prison as a result of
the disciplinary report did not advance legitimate penological
objectives.  See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.
1985); Abdul-Akbar v. Department of Corrections, 910 F. Supp.
986, 1000-01 (D. Del. 1995)(holding that, because claims of
retaliation have a potential for abuse, in order to state a claim
for unconstitutional retaliation, inmate "must allege that the
'retaliatory' conduct does not advance penological goals such as
preserving institutional order and discipline"), aff'd, 111 F.3d
125 (3d Cir.), cert. denied, 522 U.S. 852 (1997); Cook v. Lehman,
863 F. Supp. 207, 212 (E.D. Pa. 1994)(even if a prison official's
conduct affects protected First Amendment rights, courts should

14

defer to the official's discretion aimed at protecting internal
security and order, so long as they are "reasonably related to
legitimate penological interest")(citing Thornburgh v. Abbott,
490 U.S. 401, 413 (1989)).

As stated above, the disciplinary report and the resulting
transfer in response to Garrett's participation in the August 17,
2003 prison disturbance are not exaggerated responses and were
clearly aimed at protecting internal prison security and order at
Fort Dix.  In addition, Garrett's transfer was an objectively
reasonable response by the BOP for Garrett's own protection in
the event other inmates regarded him as a "snitch", even if he
wasn't one.  Consequently, the Court finds no First Amendment
violation as alleged by petitioner.

3.  *Disciplinary Transfer Was Valid.*

Moreover, an inmate generally does not have a liberty
interest in assignment to a particular institution or to a
particular security classification.  See Wilkinson v. Austin, 125
S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a
liberty interest in avoiding transfers to more adverse conditions
of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983);
Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes,
427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9
(1976)(noting that prison classification and eligibility for
rehabilitative programs in the federal prison system are matters

15

delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). See also Sandin, 515 U.S. at 484-86 (holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

Thus, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.  As determined by this Court, petitioner's transfer from FCI Fort Dix was not retaliatory in violation of the First Amendment.  Rather, it was a legitimate disciplinary transfer, within the BOP's broad discretion with respect to internal operating decisions, that served to preserve the order, security, and discipline within the prison facility.  Therefore, the Court finds no violation of a protected liberty interest, and the petition will be denied for lack of merit.

## CONCLUSION

Based upon the foregoing, Garrett's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied for lack of substantive merit.  An appropriate Order accompanies this Opinion.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:  **February 15, 2006**

17